730 So.2d 723 (1999)
Magna M. DECUBELLIS, et al., Appellants,
v.
Douglas RITCHOTTE, et al., Appellees.
No. 98-1991
District Court of Appeal of Florida, Fifth District.
February 5, 1999.
Rehearing Denied March 4, 1999.
*724 Howard S. Marks and Samuel M. Nelson of Graham, Clark, Jones, Builder, Pratt & Marks, Winter Park, for Appellants.
Ronald H. Roby of Ronald H. Roby, P.A., Winter Park, for Appellees.
DAUKSCH, J.
This appeal arises out of a mortgage and lien foreclosure action. Because of fatal pleading deficiencies and the lien-holder's failure to comply with statutory requirements, we reverse the appealed foreclosure judgment.
In 1994, appellee Orange County Raceway (the Raceway) obtained a summary final judgment against Robert Lamp (not a party to this appeal). The judgment was recorded in the Orange County public records, but failed to state the Raceway's address. The following year, Lamp acquired the real property at issue in this appeal and used it to secure a mortgage to the Ritchottes (not a party to this appeal). In June 1997, the Ritchottes filed a complaint and lis pendens to foreclose their mortgage from Lamp. The Raceway answered, counterclaimed against the Ritchottes, and cross-claimed against Lamp, asserting that it was an unpaid senior creditor of Mr. Lamp and therefore entitled to proceeds from the foreclosure sale. However, the Raceway failed to file a lis pendens in connection with its claim. As a consequence, Orange County public records reflected only the Ritchottes' lis pendens as encumbering the subject property.
On July 30, 1997, appellant Howard Builders paid off the Ritchottes on behalf of the Lamps and obtained the property by warranty deed. On August 5, the Ritchottes voluntarily dismissed their claim and released the lis pendens. Howard Builders then recorded the warranty deed in Orange County's public records and used the property to secure a mortgage to appellant Citrus Bank. On April 10, 1998, eight months after the Ritchottes' lis pendens was dissolved, Howard Builders conveyed a portion of the property to appellant Magna Decubellis by warranty deed. Decubellis used the property to secure a $90,000 loan from appellant North American.
After defaulting all adverse parties to its cross-claim, on April 28, 1998, the Raceway obtained a judgment setting the foreclosure sale for June 2. The Raceway was the high bidder and received a certificate of sale the same day. Appellants were never joined as parties to the Raceway's foreclosure claim, were never served with the Raceway's cross-claim, and never knew of the Raceway's lien interest. Consequently, they never opposed the Raceway's default and judgment, either collectively or individually, until after the foreclosure sale. After discovering the judgment and sale on June 4, appellants filed a Motion for Relief from Judgment and to Vacate Judgment and Sale. The circuit court denied the motion this appeal followed.
Appellants argue that the court below lacked subject-matter jurisdiction to enter the foreclosure judgment for two reasons. First, they contend that the Raceway's failure to plead exhaustion of remedies in its answer and cross-claim deprived the court of jurisdiction. Second, appellants argue that the Raceway's money summary judgment against Lamp never matured into a lien because it failed to state the creditor's address as required by statute. We agree on both points and address each issue in turn.
In Miller v. Security-Peoples Trust Co., 142 Fla. 434, 195 So. 191 (Fla.1940), the court held that "before a creditor can resort to ... a creditor's bill he must first secure a judgment at law and exhaust all means afforded by the law to recover on such judgment." Id. at 194. The court went on to *725 state that "allegations relating to jurisdiction of equity cannot be shown by general averments... but facts must be alleged showing that only in equity will the remedy be full, adequate and complete." Id. The third district in Gantz v. First Nat'l Bank of Miami, 138 So.2d 367 (Fla. 3d DCA 1962) interpreted this ruling to require creditors to plead exhaustion of remedies in order to properly invoke a court's jurisdiction in equity. Id. at 368. However, neither of these decisions applied this rule to creditors who entered the litigation as cross-claimants in the underlying foreclosure action.
The third district in Young v. Charnack, 295 So.2d 665 (Fla. 3d DCA 1974), though, applied Gantz to facts which are procedurally identical to the instant appeal. In Charnack, the mortgagee brought a foreclosure action against the appellant-property owners. Id. at 665. Appellee, a senior judgment creditor, answered and cross-claimed for a share of foreclosure proceeds, but failed to allege exhaustion of remedies in the cross-claim. The trial court granted summary judgment in favor of the mortgagee and ordered that appellee-judgment creditor be paid out of proceeds generated by the foreclosure sale. On appeal, the third district reversed, holding in relevant part that "a resort to equity for collection of a judgment is not authorized in the absence of a showing of unavailability of collection by legal process." Id. at 666 (citing Gantz.) The court noted that "the cross-claim of the judgment holders made no such showing, alleging merely the existence and priority of the judgment and that it had not been paid." Id. at 667. Consequently, the court reversed that portion of the judgment ordering the payment of foreclosure proceeds to the appellee-creditor.
Charnack makes clear that exhaustion must be pled even by cross-claimants in foreclosure suits who seek to invoke the court's powers in equity. As in Charnack, the Raceway entered this case as a cross-claimant seeking to defend its judgment by establishing a right in the debtor's (Mr. Lamp) property. Its answer, counter-claim, and cross-claim alleges only that it is the holder of a final judgment against Lamp, that the judgment is past due, that Lamp owns the subject property, and that the Raceway is therefore entitled to proceeds from the foreclosure sale. It does not allege that it has resorted to execution, attachment, or other legal remedies to satisfy the judgment, or that such remedies are inadequate. Nor does the record indicate that the Raceway has utilized, much less exhausted, available legal avenues. We conclude that the Raceway did not properly invoke the circuit court's jurisdiction in equity.
Further, the underlying judgment against Lamp failed to comply with section 55.10(1), Florida Statutes (1997) and, thus, never matured into a lien. The statute dictates the procedure for creating judgment liens on real property as follows:
A judgment, order, or decree becomes a lien on real estate in any county when a certified copy of it is recorded in the official records or judgment lien record of the county, whichever is maintained at the time of recordation, and it shall be a lien for a period of 7 years from the date of the recording provided that the judgment, order, or decree contains the address of the person who has a lien as a result of such judgment, order, or decree or a separate affidavit is recorded simultaneously with the judgment, order, or decree stating the address of the person who has a lien as a result of such judgment, order, or decree. A judgment, order or decree does not become a lien on real estate unless the address of the person who has a lien as a result of such judgment, order, or decree is contained in the judgment, order, or decree or an affidavit with such address is simultaneously recorded with the judgment, order or decree.
Id. (emphasis added). Although the Raceway argues that the statute is ambiguous, the first district recently ruled in a per curiam opinion that section 55.10(1) "unambiguously requires that [the creditor's] address be on the judgment lien." Robinson v. Sterling Door & Window Co., 698 So.2d 570, 571 (Fla. 1st DCA 1997). Significantly, the court concluded that the address of the lien-holder's attorney was insufficient to satisfy the statutory requirement. Id. See also Hott Interiors, Inc. v. Fostock, 721 So.2d 1236 (Fla. 4th DCA 1998) (attorney's address does not satisfy unambiguous requirements of § 55.10).
*726 The Raceway's address does not appear anywhere on the recorded summary judgment against Lamp. Nor did the Raceway avail itself of the § 55.10(1) safety net and file an affidavit stating its address. Given the statute's clear language and the Robinson ruling, we conclude that the Raceway's judgment against Lamp never matured into a lien nor attached to the subject property. Accordingly, the foreclosure judgment is reversed.
Appellants next argue that the foreclosure judgment is void because they were never served with process or otherwise given notice of the proceedings. They also note that they were never on notice of the Raceway's cross-claim until after the foreclosure sale. Citing this district's decision in Fine v. Fine, 400 So.2d 1254 (Fla. 5th DCA 1981), they contend that if the pleadings in a case do not join a party, that party does not come within the court's jurisdiction. Appellants concede that filing of a lis pendens gives constructive notice to the world of impending action involving particular property, and that subsequent legal action cuts off the rights of third parties in the property whether joined or not. However, they argue that this exception to Fine is inapplicable because the Ritchottes dismissed their notice of lis pendens before appellant Howard Builders recorded its interest in the property. The Raceway responds that Howard Builders acquired the deed on July 30, before the Ritchottes dismissed their notice of lis pendens. Citing Marchand v. DeSoto Mortgage Co., 149 So.2d 357, 359 (Fla. 2d DCA 1963), the Raceway argues that the lis pendens therefore served as notice of all facts pled and issues raised in the Ritchottes' proceedingparticularly the Raceway's answer, counter-claim, and crossclaim.
We conclude that the appellants had no actual or constructive notice of the Raceway's interest under a logical reading of the lis pendens statute and case-law. Section 48.23, Florida Statutes (1997) defines the effect of a notice of lis pendens on rights in the encumbered property. In relevant part, section 48.23 states that:
[T]he filing for record of such notice of lis pendens shall constitute a bar to the enforcement against the property ... of all [unrecorded] interests and liens ... unless the holder of any such unrecorded interest or lien shall intervene ... within 20 days after the filing and recording of said notice of lis pendens. If the holder of any such unrecorded interest or lien does not intervene in the proceedings [before] judicial sale of the property described, ... the property shall be forever discharged from all such unrecorded interests and liens. In the event said notice of lis pendens is discharged by order of the court, the same shall not in any way affect the validity of any unrecorded interest or lien.

Id. (emphasis added). The filing of a lis pendens, then, "implies a pending suit and... is the jurisdiction, power or control which courts acquire of property involved in a suit." Marchand, 149 So.2d at 359. The Florida Supreme Court has defined the scope of notice created by a lis pendens filing as follows:
The general rule is that lis pendens is notice of all facts apparent on the face of the pleadings and such other facts as the pleadings would necessarily put the purchaser on inquiry and of the contents of exhibits filed and proved if they are pertinent to the matter in issue or the relief sought.
* * * * * *
The notice arising from a pending suit ... does not affect property not embraced within the descriptions of the pleadings; nor does its operation extend beyond the prayer for relief Notice is also limited to those matters in dispute between the parties to the action.

DePass v. Chitty, 90 Fla. 77, 82, 105 So. 148, 150 (Fla.1925)(emphasis added). Some states consider the filing of lis pendens as notice to the world simply that there is a suit pending with regard to the encumbered property. See 54 C.J.S. Lis Pendens § 33 (1993). However, Florida courts have apparently broadened the scope of notice to include "all facts apparent on the face of the pleadings." Chitty, 105 So. at 150. The Raceway argues that this ruling applies to the facts and issues pled in its cross- and counter-claims to the Ritchottes's underlying action. In effect, the Raceway seeks the protection of the blanket notice provided by *727 the Ritchottes's lis pendens. However, an application of this interpretation to the facts at bar causes an illogical result.
In cases where the notice of lis pendens is dismissed, but judicial sale is ordered to satisfy cross-claimants in the underlying action, persons who acquire interests in the property after dismissal but before sale are without notice of the underlying claim unless served. Accordingly, the rule stated in Chitty, that filing of lis pendens gives notice of facts and issues pled in the underlying action, should be interpreted more narrowly than is suggested by the Raceway. The statute itself states that a discharged notice of lis pendens can not affect the validity of third party interests in the property. Consequently, if the dismissal of a lis pendens removes notice of the facts and issues pled by the party who filed the notice, it should certainly remove notice of pending cross- and counter-claims. This is supported by the Florida Supreme Court's recent ruling in Medical Facilities Dev., Inc. v. Little Arch Creek Prop., Inc., 675 So.2d 915 (Fla.1996). The court analyzed the protection provided by a lis pendens filing as follows: "The notice protects the lis pendens proponent's interest [and] also protects future purchasers or encumbrancers of the property." Id. at 917 (emphasis added). There is no indication that the notice protection extends to past encumbrancers who enter the fray as cross-claimants seeking to protect their established interest. The Raceway should have filed its own notice of lis pendens to protect its interest as it would have had to do had it brought an independent foreclosure action against the Lamps.
Finally, appellants argue that the court's failure to set aside the default judgment as permitted by Rule 1.540, Florida Rules of Civil Procedure, was an abuse of discretion in light of the facts in this case. They argue that the foreclosure judgment was based on fatal pleading deficiencies particularly the Raceway's failure to plead exhaustion of remedies and failure to include its address on the judgment against Lamp. Appellants also contend that they have established excusable neglect by demonstrating that their failure to contest the Raceway's claim resulted from their lack of notice.
We agree that the court below erred by denying appellants' motion for relief from the default foreclosure judgment. Florida's well-settled rule is that to reverse a default judgment, "a defendant must show excusable neglect, a meritorious defense, and due diligence in seeking relief after learning of the default." Khubani v. Mikulic, 620 So.2d 800, 801 (Fla. 2d DCA 1993). Further, "[a]ny reasonable doubt regarding the vacation of a default should be resolved in favor of granting the application and allowing a trial on the merits." Id. (citing North Shore Hosp. v. Barber, 143 So.2d 849 (Fla.1962)). Accordingly, Florida courts have found excusable neglect and reversed defaults under facts demonstrating such neglect much less clearly than the case at bar. See, e.g., Marshall Davis, Inc. v. Incapco, Inc. 558 So.2d 206 (Fla. 2d DCA 1990)(defendant properly served with complaint, but failed to notify its attorney and defend against plaintiff's claims); Khubani, 620 So.2d at 801 (defendant properly served with complaint, but refused to accept delivery of and defend against plaintiffs motion for default).
The appellants in this case have demonstrated excusable neglect. They failed to defend against the Raceway's claim because they never had notice of the proceedings, either by service of process or otherwise. The lis pendens had already been discharged by the time Howard Builders and subsequent transferees recorded their respective interests in the property. Further, even if appellants had notice of the lis pendens, the Raceway's claims were beyond the scope of the notice provided because the filing was for the benefit of the Ritchottes.
Appellants have also established meritorious defenses which, if properly litigated below, would have resulted in dismissal of the Raceway's cross-claim. They have shown that the Raceway failed to plead exhaustion of remedies as required with actions in equity, thereby depriving the court below of subject-matter jurisdiction. They have also demonstrated that the Raceway's failure to include its address on the recorded judgment against Lamp precluded that judgment from maturing into a lien. Finally, they established that the default judgment was void because it was entered without notice to appellants.
*728 Appellants also exercised due diligence in seeking relief from the default. The Raceway obtained the foreclosure judgment on April 28, 1998, after defaulting all adverse parties. The resulting foreclosure sale took place on June 2, and appellants first learned of the judgment and sale on June 4. One week later, appellants filed their Motion for Relief from Judgment and to Vacate Judgment and Sale. The motion set out the facts demonstrating their excusable neglect and meritorious defenses and appellants executed a notarized verification of the same. There was no appreciable delay between final judgment and appellants' motion for relief. Nor does the record indicate that the Raceway took any actions during the intervening period, such as transferring or encumbering the property, which may have been prejudiced by the short delay.
In sum, we conclude that the court below abused its discretion by denying appellants' motion. The judgment is reversed.
REVERSED.
GOSHORN and ANTOON, JJ., concur.